[Cite as *Tepe v. Tepe*, 2012-Ohio-1482.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| THOMAS M. TEPE, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 11CA13 |
| | : | |
| vs. | : | **Released: March 20, 2012** |
| | : | |
| THOMAS M. TEPE, et al., | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendants-Appellees. | : | |

APPEARANCES:

Dennis A. Becker, Becker & Cade, Cincinnati, Ohio, for Appellant.

Michael DeWine, Ohio Attorney General, and Derrick Knapp, Assistant Attorney General, Columbus, Ohio, for Appellee Administrator of Bureau of Workers' Compensation.

McFarland, J.:

{¶1} Appellant Thomas M. Tepe appeals the decision of the Highland County Court of Common Pleas denying his workers' compensation claims. Tepe argues the trial court erred in finding he failed to meet his burden of proof. Having reviewed the record, we find the trial court's decision was not against the manifest weight of the evidence and we affirm its judgment.

FACTS

{¶2} Tepe is a self-employed attorney whose business voluntarily participates in the workers' compensation fund. Tepe is a non-insulin dependent

diabetic, and in March 2009, he sought medical treatment for an ulceration of his right foot. The ulcer progressed and was not healing. On April 16, 2009, Tepe's physician referred him to a wound care center because normal treatments had failed to heal the ulcer.

{¶3} At that point the ulcer was described as a Wagner Grade 1.[1] Tepe received an air-cast to wear to offload the pressure from the ulcer and he restricted himself to working from home and attempted to remain off of his foot as much as possible. However, on April 20, 2009, Tepe began a two-day civil trial where he was trial counsel. Tepe maintained he had to be on his foot more than usual and had to carry a large amount of case files, adding to the pressure on his feet. Even with the air-cast, Tepe experienced great discomfort in his foot.

{¶4} On April 22, 2009, Tepe visited Dr. Brad Wenstrup at the wound care center. Dr. Wenstrup noted the ulcer was a Wagner Grade 3 because it was a deep ulceration with a possible infection. There was necrotic tissue around the wound, which Dr. Wenstrup debrided. Dr. Wenstrup also noted he could see the bone of the fifth metatarsal and due to the redness and sensitivity around the ulcer, suspected the bone may have become infected. Dr. Wenstrup ordered x-rays, an

---

[1] The Wagner Grades range from 1 through 5, with Grade 1 being a superficial diabetic ulcer and only slight penetration of the skin, and Grade 5 being an extensive wound that has caused severe gangrene and has very little chance of healing. (Wenstrup Depo. at 26-27.)

MRI, and blood work.  These tests revealed Tepe had osteomyelitis – a bone infection – due to the bacterium enterococcus.

{¶5} The x-rays and MRI revealed the bone was rarefied, or degraded due to the infection.  Thus, Dr. Wenstrup scheduled a surgery and removed the head of the infected bone, as well as portions of other nearby bones, to prevent further infection and to permit the ulcer to heal.  After some time, Tepe's ulcer did eventually heal.

{¶6} Tepe then filed a claim to participate in the workers' compensation fund for his diabetic ulcer, and the substantial aggravation of the ulcer and osteomyelitis.  The Bureau of Workers' Compensation ("BWC") denied Tepe's claims.  After exhausting his administrative remedies, Tepe filed an appeal with the Highland County Court of Common Pleas, pursuant to R.C. 4123.512.

{¶7} The trial court conducted a de novo bench trial regarding Tepe's claims.  Tepe testified and presented the video deposition of Dr. Wenstrup.  The BWC presented the video deposition of Dr. Deborah Middaugh, who had performed an independent medical examination of Tepe.  The trial court then issued its findings of fact and conclusions of law, denying all of Tepe's claims.  The trial court reasoned Tepe failed to prove causation on any of his claims.  Tepe now appeals.

ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED IN CONCLUDING PLAINTIFF'S
EVIDENCE OF CAUSATION DID NOT MEET THE REQUISITE
BURDEN OF PROOF TO PARTICIPATE FOR THE CONDITIONS OF
SUBSTANTIAL AGGRAVATION OF A DIABETIC FOOT ULCER ON
THE LATERAL PART OF THE RIGHT FOOT AND THE FIFTH
METATARSAL WITH RESULTANT OSTEOMYELITIS AND/OR
SUBSTANTIAL AGGRAVATION OF OSTEOMYELITIS."

A. Standard of Review

{¶8} In his sole assignment of error, Tepe argues the trial court erred by denying his claims and preventing him from participating in the workers' compensation fund. While Tepe argues specific points, he is essentially arguing the trial court's judgment was against the manifest weight of the evidence.

{¶9} "We will not reverse a trial court's judgment in a civil action unless it is against the manifest weight of the evidence. A trial court's judgment is not against the manifest weight of the evidence so long as some competent and credible evidence supports it. See, e.g., *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. In determining whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10

Ohio St.3d 77, 79-80, 461 N.E.2d 1273. Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court. *Amsbary v. Brumfield,* 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, at ¶ 11. Instead, we must uphold the judgment so long as the record contains 'some evidence from which the trier of fact could have reached its ultimate factual conclusions.' Id., citing *Bugg v. Fancher,* [4th Dist.] No. 06CA12, 2007-Ohio-2019, at ¶ 9. Moreover, we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. See, e.g., *Seasons Coal,* 10 Ohio St.3d at 80; *Jones v. Jones,* [4th Dist.] No. 07CA25, 2008-Ohio-2476, at ¶ 18." *Woody v. Woody*, 4th Dist. No. 09CA34, 2010-Ohio-6049, at ¶ 17. "However, to the extent that the judgment involves a question of law, we review the question of law independently and without any deference." Id., citing *Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, at ¶ 10.

B. Legal Analysis

R.C. 4123.01(C) provides:

**{¶10}** "(C) 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

* * *

{¶11} "(4) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation."

{¶12} "The Supreme Court has held that in order for such an aggravation of a pre-existing condition to be compensable, 'there must be a substantial causal relationship between the [aggravating occurrence] and the [claimed disability], and such relationship [cannot] be proved by mere magic words of direct causation without evidence to definitely support it.'" *Trent v. Barry* (Mar. 11, 1992), 4th Dist. No. 1885, quoting *McKee v. Electric Auto-Lite Co.* (1958), 168 Ohio St. 77, 82, 151 N.E.2d 540. Thus, when using medical expert testimony to establish the causal relationship between the employment activity and the alleged substantial aggravation, "the establishment of proximate cause through medical expert testimony must be by probability." *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (abrogated on other grounds). "[A]n event is probable if there is a greater than fifty percent likelihood that it

produced the occurrence at issue." *Stinson v. England* (1994), 69 Ohio St.3d 451, 455, 633 N.E.2d 532, citing *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 253, 272 N.E.2d 97 and *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 265, 553 N.E.2d 1038. "At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by [the employment activity]." *Shumaker* at 369, citing *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 252, 272 N.E.2d 97. "Opinions expressed with a lesser degree of certainty must be excluded as speculative." Id.[2]

{¶13} Preliminarily, Tepe's claims for compensation for the diabetic ulcer itself and the substantial aggravation of the osteomyelitis were properly denied. The evidence adduced established Tepe already had the diabetic ulcer prior to April 20, 2009; thus, his employment activity had not caused it.

{¶14} Regarding the osteomyelitis, Dr. Middaugh testified the infection was present prior to Tepe's trial because the x-rays and MRI of April 22, 2009 showed rarefaction – a degradation of the bone – which would take weeks or months to occur. (Middaugh Depo. at 23.) Although there were no clinical signs of the osteomyelitis on April 16, 2009, and there were signs of it on April 22, 2009, Dr. Wenstrup was unable to establish a date for the onset of the osteomyelitis. (Wenstrup Depo. at 98-99.) Thus, there was no evidence establishing Tepe's

---

[2] Despite Tepe's argument to the contrary, the trial court did apply the correct standard in this regard.

employment activities had caused the osteomyelitis. Furthermore, neither expert testified concerning a substantial aggravation of the osteomyelitis. Therefore, the trial court properly rejected Tepe's first two claims.

{¶15} Tepe's remaining claim was for the substantial aggravation of the diabetic ulcer on his right foot. Here, the trial court correctly refused to consider Dr. Middaugh's testimony as to whether Tepe's employment activities substantially aggravated the diabetic ulcer because she had an extraordinarily high standard of what constituted "substantially aggravated." Dr. Middaugh believed only injuries made permanently worse were "aggravated." (Middaugh Depo. at 30.)

{¶16} Likewise, the trial court's finding that Dr. Wenstrup's testimony was too equivocal to establish causation was supported by the evidence. Dr. Wenstrup's testimony was lacking in two ways: first, he refused to accept Tepe's recount of his activities during the civil trial as true; second, he refused to state an opinion on causation with any degree of probability.

{¶17} Dr. Wenstrup refused to render an opinion based on Tepe's representation that he was on his foot more than usual during the trial. Rather, Dr. Wenstrup gave conditional statements that if it was proven Tepe was actually on his foot more than usual and wore a normal, closed shoe, then that could have aggravated his diabetic ulcer. "I can say with a medical degree of probability, if

indeed, that's the type of activity that took place, at 51 percent, I would say it made it worse." (Depo. at 113.) But Dr. Wenstrup immediately qualified his statement by adding he assumed Tepe was in "a normal shoe, a closed shoe." (Depo. at 114.)

{¶18} Not only are these statements conditioned upon an erroneous fact – that Tepe wore a normal, closed shoe, when he was actually wearing an air-cast – but they are also expressed as a possibility, not probability. According to Dr. Wenstrup, the alleged activities during the trial *could* have substantially aggravated the ulcer, but he gave no opinion that they probably did, or that they more than likely substantially aggravated the ulcer.

{¶19} Overall, Dr. Wenstrup testified it was impossible to place a percentage on the probability that Tepe's employment activities substantially aggravated the preexisting diabetic ulcer. (Depo. at 162.) In Dr. Wenstrup's opinion, "there's a lot of things missing for me to render a legitimate opinion * * *." (Depo. at 116.) Dr. Wenstrup's testimony was summarized as follows:

{¶20} "Q.     -- it's fair to say we just don't know if that -- what effect those days [during the trial] had on his condition?

{¶21} "A.     Well, I can't."

(Depo. at 164.) Thus, Dr. Wenstrup's testimony fell short of establishing Tepe's employment activities substantially aggravated his diabetic ulcer. With Tepe having failed to establish causation, the trial court properly rejected this claim, too.

{¶22} Accordingly, the trial court's judgment was not against the manifest

weight of the evidence and we overrule Tepe's first assignment of error.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J., and Kline, J.: Concur in Judgment and Opinion.


For the Court,

BY:   _____
         Matthew W. McFarland, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**